24-3040-cr
*United States v. Anderson*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of December, two thousand twenty-five.

PRESENT:
> DENNIS JACOBS,
> JOSEPH F. BIANCO,
> > *Circuit Judges*,
> VICTOR A. BOLDEN,
> > *District Judge.*[*]

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                        24-3040-cr

SHAMAR LEGGETTE, SAY-QUAN POLLACK,
AKA SAY-QUAN POLLOCK,

> *Defendants,*

JUWAN ANDERSON,

> *Defendant-Appellant*.

---

FOR APPELLEE:                     REBECCA SCHUMAN, (Saritha Komatireddy, *on the brief*), Assistant United States Attorneys, *for*

---

[*] Judge Victor A. Bolden, of the District Court of Connecticut, sitting by designation.

Joseph Nocella, Jr, United States Attorney for the Eastern District of New York, New York, New York.

FOR DEFENDANT-APPELLANT:    KENDRA L. HUTCHINSON AND DANIEL HABIB, Assistant Federal Defender, Federal Defenders of New York, Inc., New York, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (William F. Kuntz, II, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on November 6, 2024 is **AFFIRMED**.

Defendant-Appellant Juwan Anderson appeals from the district court's judgment, following his guilty plea, to one count of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a). Anderson's sole challenge on appeal is to the restitution order imposed by the district court at sentencing. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

On Sunday, July 24, 2022, Anderson and two co-defendants allegedly entered the Leaders of Tomorrow church in Brooklyn, New York, during morning services and, while the co-defendants brandished firearms, they stole jewelry and personal items from the pastor of the church ("Victim 1") and his wife, who was also a member of the clergy ("Victim 2") (collectively, the "Victims").[1] Following Anderson's guilty plea to the robbery, the government sought $402,639 in restitution for the Victims as part of his sentence, based upon photographs of the appraisal documents for seven specific items that Anderson admitted to stealing during the robbery. Each appraisal record was dated and listed the name of the gemologist/appraiser that conducted the

---

[1] Co-defendant Say-Quan Pollack pled guilty to one count of Hobbs Act Robbery and was sentenced to 87 months' imprisonment, to be followed by 2 years' supervised release, and ordered to pay restitution in the amount of $402,639. Co-defendant Shamar Leggette died and the charges against him were subsequently dismissed.

analysis. In his sentencing memorandum, Anderson argued that: (1) the district court should decline to order restitution based upon the photographs of the appraisal records because those records were insufficient to establish the stolen jewelry's value; and (2) in the alternative, the district court should conduct an evidentiary hearing to properly calculate the loss amount. At sentencing, the district court discussed the issue of restitution at length and considered the issues raised by the parties in their sentencing memoranda. The district court was unpersuaded by Anderson's arguments regarding the unreliability of the appraisal records and, instead, found those records sufficiently reliable to calculate the restitution amount, noting also that the stolen items were unrecoverable because they were presumably sold to a "fence"[2] and the requested amount was consistent with its restitution determination with respect to co-defendant Pollack. The district court sentenced Anderson to 63 months' imprisonment, to be followed by two years of supervised release, and ordered restitution in the amount of $402,639. The district court reserved the right to hold an evidentiary hearing within 90 days of the sentencing to determine if any additional amounts were owed in restitution. No evidentiary hearing was ultimately held.

On appeal, Anderson argues the district court erred in awarding restitution because the appraisal records were unreliable and, if it was going to award restitution, it should have held an evidentiary hearing regarding the proper amount.

The Mandatory Victims Restitution Act of 1996 ("MVRA") governs defendants' obligations to pay restitution. 18 U.S.C. § 3663A, *et seq*. Restitution must reflect the actual amount of the victims' losses; however, this Court has "never used the word 'actual' in this context to mean 'mathematically precise.'" *United States v. Gushlak*, 728 F.3d 184, 195 (2d Cir. 2013). Disputes as to the proper amount or type of restitution are resolved by courts by a preponderance

[2] A "fence" is someone "who receives stolen goods, . . . with the intent to sell them in a legitimate market." *Fence*, BLACK'S LAW DICTIONARY (12th ed. 2024).

3

of the evidence, and "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C. § 3664(e). We have emphasized that restitution orders require a "delicate balancing of diverse, sometimes incomparable factors" and "the sentencing court is in the best position to engage in such balancing." *United States v. Ismail*, 219 F.3d 76, 78 (2d Cir. 2000) (internal quotation marks and citation omitted). As such, "[w]e review an MVRA order of restitution deferentially, and we will reverse only for abuse of discretion." *United States v. James*, 151 F.4th 28, 49 (2d Cir. 2025) (internal quotation marks and citation omitted). "An abuse of discretion occurs when a challenged ruling rests on an error of law, a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions." *United States v. Goodrich*, 12 F.4th 219, 227 (2d Cir. 2021) (internal quotation marks and citation omitted). Similarly, "decisions as to what types of procedure are needed lie within the discretion of the sentencing court and are reviewed for abuse of discretion." *Gushlak*, 728 F.3d at 193 (alteration adopted) (internal quotation marks and citation omitted).

We address Anderson's challenges to the restitution order in turn.

## I.      Restitution Award

Anderson first argues that "the district court abused its discretion in finding, over objection, that the government had met its burden to prove victim loss." Appellant's Br. at 9. In particular, Anderson primarily takes issue with the district court's reliance on the appraisal records in calculating the restitution order, claiming that (1) the records were unsworn hearsay and (2) their provenance was not "wholly established." Appellant's Br. at 12. We find Anderson's arguments unpersuasive.

The district court did not abuse its discretion in determining that the government had proven the restitution amount by a preponderance of the evidence based upon the third-party appraisal records. *See United States v. Martinez*, 413 F.3d 239, 243–44 (2d Cir. 2005) (explaining that "the Sixth Amendment does not bar the consideration of hearsay testimony at sentencing proceedings" but that hearsay evidence must have "'some minimal indicia of reliability'" to comply with the Due Process Clause (quoting *United States v. Egge*, 223 F.3d 1228, 1132 (9th Cir. 2000))). For all but one of the stolen items for which restitution was sought, the documentation contained the identification of the gemologist/appraiser and the appraised amount of the stolen item, as well as a photograph and description of that item.[3] Moreover, the appraisal records aligned with the description of those items, enumerated in the plea agreement, that Anderson admitted were stolen.[4] To the extent Anderson objected to one appraisal that was issued after the robbery, the district court reasonably determined that it was sufficient—especially for a person no longer in possession of the stolen item—to submit photographs to an appraiser and for the appraiser to determine "if that is what you had, [then] that is what it is worth." App'x at 111; *see also United States v. Cheng*, 96 F.3d 654, 657–58 (2d Cir. 1996) (explaining that the passage of stolen goods through untraceable, illegal traffic does not prohibit district courts from making inferences as to the actual loss suffered by victims).

Although Anderson suggests that the district court should have required the submission of sworn affidavits, neither the statute nor our precedent impose such a requirement, especially where, as here, the amounts in the appraisal records were uncontroverted. Neither in his written

---

[3] One record is a "Certificate of Authenticity" that contains a description of the stolen ring, the name of the authenticator, and an insurance replacement estimate, but no photograph of the item. *See* App'x at 85.

[4] In his plea agreement, Anderson admitted to stealing ten items from the Victims. The government only sought restitution as to the seven items for which it had third-party appraisal records.

sentencing submission, nor at the sentencing proceeding itself, did Anderson offer any evidence contradicting the value of the stolen items contained in the appraisals.[5]

In short, on this record, we conclude that the district court acted within its discretion in determining the appraisal records were sufficiently reliable to find that the government had proven the restitution amount by a preponderance of the evidence.

## II.     Evidentiary Hearing

Anderson also argues that the district court abused its discretion by not conducting an evidentiary hearing on the issue of restitution prior to reaching its determination. We disagree. As we have explained, "in the context of contested issues regarding the propriety of a restitution award, . . . the sentencing procedures employed to resolve such disputes are within the district court's discretion so long as the defendant is given an adequate opportunity to present his position[.]" *United States v. Sabhnani*, 599 F.3d 215, 257–58 (2d Cir. 2010); *see also United States v. Maurer*, 226 F.3d 150, 151–52 (2d Cir. 2000) (per curiam) ("[T]he district court is not required, by either the Due Process Clause or the federal Sentencing Guidelines, to hold a full-blown evidentiary hearing in resolving sentencing disputes. . . . All that is required is that the court afford the defendant some opportunity to rebut the Government's allegations." (quoting *United States v. Slevin*, 106 F.3d 1086, 1091 (2d Cir. 1996) (internal quotation marks omitted))).

---

[5] To be sure, Anderson did argue that the appraisal records were unreliable because he believed they were provided by Victim 1, who was "a convicted fraudster with an established history of forging financial documents." App'x at 58. As a threshold matter, the government represented to the district court that a majority of the appraisal records were provided to the government by Victim 1's attorney, rather than directly from Victim 1. In any event, absent any evidence that the appraisal records were fabricated or otherwise unreliable, "vague and conclusory assertions" about the reliability of those records, including arguments regarding Victim 1's trustworthiness based upon his fraud conviction in an unrelated case, were insufficient to render the district court's reliance on those records to be an abuse of discretion. *See United States v. Pescatore*, 637 F.3d 128, 142 (2d Cir. 2011) (rejecting a defendant's challenge to a pre-sentence report loss chart where the defendant simply claimed that a "lower amount was revealed by '[s]imple arithmetic'" but "proffered no facts to support [his] assertion") (first alteration in original).

Here, we discern no abuse of discretion with respect to the procedure utilized by the district court relating to the imposition of the restitution order. The district court provided Anderson "ample opportunity," through his sentencing submissions and the sentencing proceeding, "to rebut the government's overall theory of victim losses." *Gushlak*, 728 F.3d at 194. More specifically, Anderson was provided with the appraisal records in discovery by the government and submitted a sentencing memorandum, in which he was able to challenge the government's position with respect to the restitution issue, including its reliance on the appraisal records. Moreover, at the sentencing proceeding, the district court provided Anderson with an additional opportunity to address the government's evidence and to proffer any evidence, if he wished to, that would undermine the government's evidence. Indeed, in requesting the hearing, Anderson's counsel did not indicate that he wished to offer any evidence to contradict the amounts contained in the appraisals, but rather explained that he generally wished to explore "how the appraisals were performed[.]" App'x at 115. However, in the absence of any evidence undermining the reliability of the appraisals, the district court did not abuse its discretion in declining to conduct a full-blown evidentiary hearing to allow Anderson to question the appraisers regarding their determinations. *See Maurer*, 226 F.3d at 152. In sum, where, as here, "the trial record shed[s] substantial light on the propriety of the restitution award," and the district court provided the defendant with sufficient opportunity to challenge the restitution amount sought by the government, it was not an abuse of discretion for the district court to decide that no separate evidentiary hearing was warranted. *Id*.; *accord Sabhnani*, 599 F.3d at 258.

*         *         *

We have considered Anderson's remaining arguments and conclude that they are without

merit.  Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court